We'll hear argument this morning in Case 22-6389, Brown v. United States and the Consolidated Case. Mr. Green? Mr. Chief Justice, and may it please the Court, once more we confront the Armed Career Criminal Act, this time with regard to which drug schedules a sentencing court is to consult in order to determine whether a prior state drug crime is a match with those federal schedules and thus either is or is not a predicate under the ACCA. We submit that the sentencing court should use the schedules that are current at the time of sentencing. That is because at its core, the ACCA is a sentencing enhancement. It is not a crime unto itself, and this Court has said that the ordinary practice is to There is no reason to deviate from that ordinary practice here. The statute is phrased in uniformly present terms. The goal of the ACCA is to incapacitate only the most serious offenders. And finally, to do otherwise, as the government suggests, would be to ignore entirely Congress's choice to change those drug schedules with the 2018 Farm Bill. With that, I invite the Court's questions. Mr. Green, didn't we say in McNeil that looking at the statute is a backward-looking exercise? You certainly did, Justice Thomas. And McNeil, however, is actually a complement in some sense for this case, not a barrier. And the reason why I say that is that McNeil looked at the historical facts of the state crime. We are now engaged in the present-tense effort to figure out what the federal sentence should be, including a potential ACCA mandatory minimum enhancement. McNeil acknowledged, as I just said, that the statute is phrased in the present tense. But McNeil found a particular problem, and that was that if a state reformulates its statute on how to assess drug weight, different prior state crimes could disappear, because a court couldn't figure out, under the new formulations, what the maximum sentence would be. So let me ask you a question, and then I'll let you go, but what if, say, using your logic and your approach, there was a crime, a state offense that was not on the schedule, that was not included on the controlled substance schedule, but then subsequently, after the commission of the state crime, but before sentencing, it's added? How would that work under your logic or your approach? Well, if the government tried to make that a match, I think the defendant might have the opportunity to claim that that was an ex post facto application of the law. In other words, it wasn't a match at the time of the offense, but it is now a match at sentencing. And we would say, under our approach, that yes, it is a match, but the ex post facto clause would be a barrier to applying the newer drug schedules there. And there, you would shift back to the drug schedules that apply at the time of the federal offense, the 922G offense. Isn't that an argument why your reading is strained? You're building in an ex post facto problem. Well, respectfully, Your Honor, we're not building in an ex post facto problem, because there already is an ex post facto problem. In other words, we're not avoiding a constitutional question here. This court decided in pew that if, after the commission of the federal crime, the sentencing range shifted upward, that would be an ex post facto problem. And that was because of the way that the guidelines anchor the sentence. Certainly here, where we have a statute, and not any kind of discretionary exercise, there would be an ex post facto problem, potentially, with the application of the new drug schedules to, that had a, that added drugs. Can I ask you what purpose your rule has to putting a defendant on notice as to what his potential liability may be at the moment he commits the federal offense? At that point, he has no idea what enhancement may or may not be, based on what conduct he committed in the state offense or even in the federal offense. I'm not sure what rule of interpretation would counsel that approach. Respectfully, Justice Sotomayor, I think that's an odd conception of notice, to be honest with you. Due process notice problems arise when an offender can't tell where the law is and can't tell what the sentence is. It doesn't usually arise if the offender gets a break on the way to the sentencing forum. That's what happened in Dorsey. That's what happened in pew. That's what happened in Concepcion. So if an offender gets a break on the way, the defender gets the opportunity to take advantage of that break, to make the argument. We don't, we don't say that somebody who is on notice 10, 12, 15 years ago, when they commit a state crime, should have that crime, or should have the full sentence. I want to say fallacy of sentencing enhancements, that somehow, because there's a potential for enhancement, there may be a decision by a defendant not to commit a crime. It's unlikely to ever really happen, but accepting that supposition, your rule doesn't do anything to enhance rejection of a criminal from committing a crime again. Well, I think our rule does do something very important, which is to respect Congress's choice to change the drug schedules and to narrow the types of drugs that are going to go onto the federal schedule, and that, of course, affects the matching exercise. So our rule respects the change that Congress made in 2018. And with respect to the prior notice, as I said, I think it's an odd conception to say that you should be culpable for some future act that you had not even committed yet, because you were on notice at that time. Mr. Green, can I ask you a question about the distinction between your approach and the time of federal offense approach? Why does it make sense, or why would it make sense, for Congress to say that two defendants who were convicted at the exact same time should be sentenced differently simply by virtue of when their sentencing happened? I mean, doesn't the other approach, if we're not going to choose the government's approach, it just seems to me like the time of federal offense approach makes more sense of the scheme. Well, any line drawing that's done with respect to the applicability or the matching exercise is going to create some arbitrariness. And the court acknowledged that in Dorsey. And in fact, the same sort of hypothetical that Your Honor posed was discussed in McNeil and also discussed in Dorsey. And the resolution there was that a time of sentencing approach uniformly, even though there's going to be, as I say, arbitrariness to any line, temporal line drawing exercise that the court does, the time of sentencing position at least anchors it in a way that's consistent throughout and, according to the court in Dorsey, removes some of the arbitrariness. And isn't that the sort of way it's ordinarily done in the sentencing world? I mean, I understood that under the sort of normal federal sentencing process, a federal judge applies the sentencing law at the time of sentencing. That's correct, Your Honor. So that's the standard in sentencing. To the extent that we accept that this ACCA is a sentencing statute, then the kind of normal ordinary course would be to apply a time of sentencing rule. That's correct. As I said in the outset, the court has repeatedly said that. That's also consistent with a very long line of cases going all the way back to, as we know, Justice Marshall's decision that show that you, as a general matter, you apply current law. Counsel, let me ask you a question about that. Your focus on current law, I mean, you say that you always have to apply the current sentencing and, you know, similarly, we always apply the statute that's current at the time, which I completely agree with. Do you disagree, however, that Congress could ever enact a statute that referred back to a historical drug schedule as it would be in this case? I mean, wouldn't we still be applying the current version of ACCA, even if it incorporated by reference a prior statute? That's not applying an old version, correct? Right. Congress not only can do that, but Congress did that in Section 3559C, which is, in essence, a federal three-strikes law. Congress wrote the words, if... I understand that Congress phrased it differently there. There's nothing that bound Congress to phrase it the same way here. But I just wanted to clarify that you agree that if Congress, if we interpret the statute that way, to incorporate the Historical Controlled Substances Act schedule, we're not applying a prior version of the statute, correct? You're not applying a prior version of the statute. No. Well, let me... We're still respecting the current statute. The defendant would still be sentenced under the current version on that interpretation of the statute. Well, no, because the ACCA incorporates the Dynamic Controlled Substances Act and the drug... Well, you say that. I understand that that's, you think, the best interpretation. All I'm saying is that if we accept the government's interpretation, we're not saying that he's somehow convicted of a different offense under 922. We're just interpreting it differently to incorporate a prior drug schedule by reference in the statutory text itself. Justice Barrett, I would say that you're using a version of the ACCA in that instance that is old, right? And because the drug schedules have changed and the ACCA incorporates by reference the drug schedules, so you actually would be using an old version of the ACCA in that instance. Can I ask you about the federal prong of this? This case arises under the state prong. But it seems to me that the sort of weak spot of your argument is whether it is requiring a different rule for the federal prong than the state prong, so that when a court is looking back to evaluate serious drug offense, the definition as it's applied under the federal prong, is the court just seeing whether or not the person was convicted at that historical point of a particular crime without reference to the federal schedule or referencing the federal schedule at that time? And you're now arguing that for the state prong, they should be referencing the federal schedule at present. And so we would have two different results if those, if I'm understanding your rule. Am I right about that? Is the federal requiring the past schedule be employed? Justice Jackson, with respect to A1, the federal convictions, I do think some of the arguments that we make about using current law of sentencing and respecting Congress's choices might open up questions about exactly how to interpret A1 in that regard. But we don't need that to prevail here because the court has already indicated that it is permissible to have different interpretations. So are you saying there would be, or do you have an argument, like if I disagree with that, if I think that these two should be read in parallel, is there an argument that the A1 prong, when it says an offense under the Controlled Substances Act, is Congress's invitation to look at what the offenses are today? I think if you said you had to read them in parallel, Justice Jackson, I would say that A1 should also use, or that in determination of whether there's an A1 predicate, you should also use the current schedule. And what would be the justification for that? I mean, if you look at the language of A1, it just refers to a prior conviction. It doesn't give any sense that there's some kind of intertemporal federal to federal categorical approach going on. Well, that's right. And it is, you know, in the event that the court views A1 to be interpreted that way, I mean, we, the A2 is really an accident of the fact that we have to do the matching exercise, right? And so there would be a sensible difference between A1 and A2, precisely. Right. But if you assume that A1 is not doing that, can you think of any reason why Congress would have wanted A1 and A2 to work differently? Because Congress, for two reasons. One is, as I said at the outset, Congress only wants to put away the most serious offenders. So in this regard, the ACCA does look prospectively. The ACCA wants to make sure that we are incarcerating for a mandatory minimum 15 years, the people who are the most serious offenders, as I say, and those people who wouldn't be the most serious offenders if Congress had changed the drug schedules. And there's the other point, right? And Congress changed the drug schedules and that should be respected. Let's say, yeah, thank you, counsel. One of the things you emphasize in your brief is the complexity that would accompany the government's approach. You know, as you said, prosecutors, courts, probation officers, defense counsel would have to track down cross-reference, outdated federal. I don't think that's that hard at all. And not that I could do it, but, you know, people who are technologically sophisticated can do it. It's apparently it's all online. Just check it that way. Well, I refer your honor to the amicus brief of the National Association or excuse me, the Clause 40 Foundation, where they lay out all the databases and they talk about exactly how difficult that that it would be. It is an exercise. And even if you are a technological savant, it's an exercise. But we're talking about, as the National Association of Federal Defenders briefs indicates, we're talking about defense attorneys that have to advise their clients of what the maximum penalty might be. Now that defense attorney has to go back and look at defunct decades old codes of federal regulation. But I guess my point is they're defunct and they're decades old and they're readily available on current databases, a couple of keystrokes. But respectfully, they're not. And that's what the amicus brief shows, working through all the databases. It's some future point they might be. But the point of administrability is to demonstrate that there could be problems on the other side, just like McNeil was concerned about problems with changes in state reformulation. By the other side, I mean, there could be changes to the code of federal regulations that actually get missed because people don't use the databases right. Thank you, counsel. Justice Thomas, Justice Alito. Can I ask you a question about the rule of lenity? Is it true that your approach would, in some cases, be harsher on defendants than the government's approach? And if that is true, have we ever said that the rule of lenity applies in a situation like that? No, because the court has said the ex post facto clause applies in a situation like that. I mean, I do think there's an argument for lenity here, but I really don't think we need it because the text is clear and the goals of the ACCA are clear and the need to respect Congress's choice in changing the drug schedules is also clear. Is it true that acceptance of your argument would mean that no marijuana conviction prior to twenty eighteen would count as an ACCA predicate? No, because there would have to be a match between the state and the federal. Now, if the federal were broader and excuse me, if the state were broader and included hemp, then there would be no match. But I can assure your honor, because I've actually looked that states are catching up rapidly. This sort of New York, Justice King, Justice Kavanaugh, we know that Congress thought about this because of nine twenty one, a twenty expungement pardon provision. And so Congress specifically addressed the circumstances under which a prior conviction would no longer count. But it doesn't include this situation. So this is not a case where we're speculating about did Congress was were they aware of this kind of issue arising? They were and they limited it to those. And we relied on that and McNeil as well. How do you respond to that? Well, I would respond to that by saying that that would simply wipe away all of the categorical approach and the work that the categorical approach does to see whether or not the state drug offense matches the federal drug offense expungement. It also, your honor, is not the only thing that can happen along the way to the forum. In addition to the categorical matching that would cause the predicate to no longer be a predicate. A defendant, for example, can cooperate and and that would eliminate the possibility of a mandatory minimum, assuming the sentencing court accepted the five K letter from the prosecutor. Thank you, Justice Barrett, Justice Jackson. Can I just ask about your sort of textual reading of the state law provision? So as I understand it, are you saying that when it says a controlled substance open parent as defined in Section 102, et cetera, you mean as currently defined? Is that the way that you're reading it? And and and I guess the government's position is as previously defined. So can you just make the best argument for why currently defined is the right way to interpret this as defined? Well, as as defined in we would maintain is that's present tense language is is in the statute. That's also present tense language, even though McNeil found problems that were sufficient enough to ignore the fact that that particular present tense language involving is also present tense language. But what it what it essentially does, Justice Jackson, is incorporate, as I said earlier, the Controlled Substances Act, Controlled Substances Act and the drug schedules that are part of that Controlled Substances Act. And those are dynamic and changing. And when Congress enacted the Controlled Substances Act, Congress wanted it to change. Congress said, here's the list of drugs, but we're going to change those as as as we want you to change those as they go along. And they change for important reasons. They change. So would you have expected Congress to have said something static if it didn't mean that? In other words, if it was talking about the historical definitions, it would have said a controlled substance, you know, as defined in the act at the time of the Commission of the State Defense or something like that. Yeah, or even has been defined. I mean, and as Justice Barrett and I discussed, the thirty five fifty nine C shows that Congress knows exactly how to do that. They used almost exactly that language. Thank you. Thank you, counsel. Mr. Adler. Mr. Chief Justice, may it please the court. The 922 G offense is what triggers penalties. The government therefore agrees that courts must apply ACUS criteria in effect at the time of the 922 G offense, not the prior conviction. For example, if Congress amended ACUS criteria to delete burglary and someone then committed a 922 G offense, all agree that a prior burglary conviction would not be an ACA predicate, even if it was one at the time it occurred. The only question here then is whether ACUS controlled substance criterion somehow warrants different treatment. And it does not. That criterion expressly incorporates the substances on the federal schedules under basic rules of statutory construction. That means the substances are effectively written into ACA itself. So where a substance is removed from the schedules before the 922 G offense, it is also removed from ACUS coverage, no less than burglary in the hypothetical. I welcome the court's questions. Subsection E1 says that in the case of a person who violates section 922 G of this title and has three previous convictions, so we're talking about the previous convictions, why would we look at a current interpretation or a current violation to determine whether or not the previous conviction was fit within the statute? So, Your Honor, that is the language that this court interpreted in McNeill. And when it did so, it was referring to the historical attributes of the state law conviction. McNeill said nothing about the federal comparator against which we are comparing those attributes. And that question is governed by the default principle, the time of offense principle with which the government and we agree on that. So it's an entirely different question here. Previous convictions, that's something that's already happened. So, of course, we're going to look at the law in effect at the time of the prior. The government is not arguing to you, as I understand it, that we should be looking at the federal criteria in effect at the time of the prior conviction. What I understand the government to be saying is that somehow this controlled substance criteria in ACA is somehow different than every other criteria. That's why the burglary hypothetical is correct, because even though the burglary qualified under ACA at the time it occurred, Congress is revising its judgment and saying we no longer think burglary should count. So if that happens by the time of the 922 G offense, then everyone agrees. I believe the government agrees that that burglary should not qualify. So it's important to recognize that McNeill was addressing a completely different question than is presented in this case. That's why it was such an easy case. So you don't think there's any difference between the reference to the schedule and actually amending the underlying statute? That is correct, Your Honor. And that is that is absolutely correct. And the government gives us a single sentence in its brief about why that would not be on page 41. And it's no supporting authority. And all the government says is, well, the schedules are not contained in ACA. And so amending the schedules is not the equivalent of amending ACA. But as we explain on pages eight to nine of our reply brief, that is simply not true. Under established canons of statutory construction where one statute incorporates another or cross-references another, that latter statute is effectively contained and written into the former. That's how cross-references work. And if the government really means what it says here, that would have a profoundly destabilizing effect on legislation in this country. Congress would have to copy and paste every statute that it wants to reference. And if you think the U.S. code is unwieldy already, it would explode if that's what Congress had to do. And so that cannot possibly be right. So then we are left asking, well, how are the schedules any different here than the burglary or anything like that? So that's why you see the government relying so much on McNeil. But I don't think the government believes that argument either, because if you really take the government's view of McNeil, then what you're really doing is looking at the federal criteria and ACA at the time of the prior for all of the criteria. And that is not the government's submission in this case. That proves far too much. I thought the reason it mattered in McNeil or the argument McNeil was that the prior state conviction no longer qualified as a serious drug offense because the change in the maximum sentence under state law. But the key was that no longer qualified as a serious drug offense as a matter of ACA. The same argument here is that the change subsequent to the prior state offense means that it no longer qualifies as a serious drug offense under ACA. Yet in McNeil, I mean, you're well aware the language in McNeil is not not good for you because it's confronted that and said you must consult the law that applied at the time of that conviction. So I guess I see a parallel with McNeil, but your honor, the sentence you just quoted has to be read in context and the law in that sentence is referring to state law. Of course, subsequent changes in state law have no sorry to interrupt, but the state law change mattered because it no longer qualified as a serious drug offense as a matter of federal law. Your honor, I disagree with that reading of McNeil. Isn't that an accurate statement, though, about the facts that change in the state law maximum sentence meant that as of the time of sentencing or later, it no longer was a serious drug offense for purposes of federal law, correct? Your honor, I disagree with the characterization because the state law has nothing to do with whether something is serious enough to be a drug offense. That's something for Congress. And if I could give you an example, let me just pause you there. I thought that it had to be a 10 year sentence, right, to qualify. That is correct. OK. And the change in the state offense meant it was no longer had a 10 year sentence, no longer set. So therefore, it was no longer as a matter of federal law, a serious drug offense. Correct. That would have been correct. And McNeil said that didn't matter because states do not get to decide what is serious enough for ACCA. So I can give if I can give you a hypothetical, that's a variation of the burglary example. Let's say Congress raises the statutory maximum threshold from 10 to 20 years. Someone then commits a 922 G offense. They have a statutory maximum and their prior does a 15 years. That's not going to qualify because Congress has revised its judgment. McNeil only says that we look to state law in effect at the time of the prior to figure out what the maximum was. That's the 15 years. But Congress gets to decide if that's serious enough or not for ACCA. The states don't get to do that. So that's why the state change in state law had really nothing to do with the question we are asking here, which is what federal criteria are we looking at? And again, this is where the default time of offense principle comes in. That is grounded in the federal state. One last question on that. It would have meant that it was a serious drug offense for federal law purposes at the time he committed the state offense. Correct. That was no longer a serious drug offense for purposes of federal law later on. Correct. That's correct. That's exactly the same thing as the burglary hypothetical with which the government agrees it would have qualified at the time it occurred. But then Congress changes its judgment and says we don't want burglaries anymore or we think the statutory maximum should be 20 years. So even though it would have qualified at the time it occurred, it no longer does at the time of the 922 G offense. And again, this time of offense principle is a default rule in federal criminal law. But wait, why is why? Can you speak to the default principle in sentencing, which is not, I think, that you do the sentencing statutes or sentencing enhancements that exist at the time of the offense? You do it. Do you agree with me that you do it at the time of the sentencing? No, Your Honor, I agree with that in terms of the guidelines, because the sentencing reform act specifically says for the guidelines, you look to the version and effective sentencing. But when we're talking about federal statutory penalties, that's where the federal saving statute comes in. That's where the ex post facto clause comes in. And under those doctrines, we are always looking at the federal statutory penalties in effect at the time of the crime. That is when we are looking at notice. Is someone unnoticed that their conduct is unlawful? And what are the potential consequences for violating the law that happens at the time of the offense? Right. So the government is trying to look at notice at the time of the prior conviction, which cannot possibly be right, because it would mean that ACCA could not apply to prior convictions that predated its enactment. That would violate the ex post facto clause. We know that it does not from this court's decision in Greiger versus Burke. So that confirms that we're looking at notice at the time of the 922 G offense. And then once we do that, the administrability problems with the government's rule come into sharp focus. And if I could turn to the chief justice's point earlier, what the government's rule would require people to do ordinary people, not law librarians, is to dredge up decades old drug schedules. They are not online. The closest database we have is the ECFR, which is published by the National Archives. It goes back only to January 2017. That's not going to do much good for anybody. Well, couldn't some of your some of your amici, the National Association of Criminal Defense Lawyers or the Clause 40 Foundation, put out a handy little handbook for defense attorneys, including all of these schedules? That would solve that problem, wouldn't it? Your Honor, the key response to that is that that is not what Congress would have intended in 1986 before there was such a thing as electronic databases, before there were online digital sources. That's just not something that a Congress would have thought to do. And if you you're making this argument, am I right? Not as a matter of due process. You're just saying it's a key to statutory interpretation. Correct. And it also goes to the administrability of the government's rule, because not only are ordinary people going to have to do this. But yes, judges, probation officers, lawyers are going to have to do this. It's extremely difficult to do. Well, what do you say to your friend's argument? I'm sure would say to you, well, even under your rule, you're going to have to go look at old sentencing guidelines, sentencing regimes, and some people are going to be denied the benefit of later enacted revisions to the schedule, reducing penalties under the federal conviction and federal sentencing. What do you say to those two points from your friend? But otherwise agree, I'm sure with almost everything you're saying. Well, we would have no problem, of course, with the time. I know you wouldn't. I got that. That wasn't my question. Sure, Your Honor. So I just don't think that is consistent with notice principles that we typically use in criminal law. We're looking at notice when someone commits the crime. That's how it's always done. There's still going to be the practical problem you just talked about so well of looking at old old sentencing rules. No, Your Honor, because that's a key difference between our rule and the government's rule. I get it's better than the government's rule, but I'm sure Mr. Green would say it's still worse than his from that perspective. Your Honor, I actually don't think so, because for a time of sentencing rule, you're going to have to look at not just the federal schedules from the time of offense, but from the time of post facto problem if substances are added in the intervening period. So our rule, it's a single contemporaneous schedule. That's it. OK, I appreciate that response and your time's up. I got one more question for you later. Thank you, counsel. Justice Thomas, Justice Alito. Would you say no? I did have a question, too. Would you say that someone who's I assume that in your district and the other districts of Florida, there have been lots of convictions for possession with intent to distribute huge quantities of cocaine? Would you say that's correct? Huge, large quantity, 10 kilos, 20 kilos. Well, I don't want to agree to that, Your Honor, but there are large quantities. There haven't been cases in Florida involving that. I'm sure there have, Your Honor. All right. Would you say that somebody who was convicted of such an offense in 2012 committed a serious drug offense? A federal offense or a state offense? A state offense. A state offense in 2012 for possession with intent to distribute cocaine? Yes. Under our view, that would not, in Florida at least, that would not qualify. However, I want to emphasize. That would not qualify because the Florida schedule at that time included this drug, 123-io-flu-pain. That is why. That is correct. And when these people were arrested for possession of 10 kilos, I mean, 10 kilos wasn't a lot in New Jersey when I was this when I was U.S. attorney there. That was our minimum for prosecuting. I mean, you must have had bigger cases than that. But let's say 20 kilos. Somebody's arrested for 20 kilos of cocaine. Is there any realistic possibility that this is 20 kilos of io-flu-pain? Your Honor, the government has not made any sort of argument like that in this case. This is a function of the categorical approach. We're just asking the court to faithfully apply that approach in this case, as it always does in all of its cases. And I can say one more thing about the Florida schedules. I want to be clear that in July 2017, Florida descheduled this substance and followed the feds. And so this is a time limited rule. Moving forward, Florida convictions for cocaine post-dating July 17 would not have the same overbreath problem that we are identifying here. And states routinely follow the federal government when they deschedule substances. So it's a time limited rule. And it's not going to knock out all Florida cocaine convictions or anything like that. Well, which ones would not knock out? It would not knock out Florida cocaine convictions post-dating July 2017 because there would be no overbreath that we are getting all the ones before that are knocked out. Should we put the categorical approach out of our minds in considering what Congress intended? I'm not sure how the court can do that. I mean, the court has held that the categorical approach is a byproduct of Congress's intent in the statute. It's held that for over 30 years. So I'm not sure how the court could put it out of its mind. And of course, the government is not asking you to do anything like that. There's been no dispute about how the categorical approach applies in this particular case at any stage of this litigation. So if we if we believe that Congress must have had the categorical approach in mind because that's what we said in Taylor and subsequent cases when it enacted the ACA provision at issue here, what does that do to your argument? I think it means that we win your honor, because we win under the categorical approach in this case, and that has been around, as you said, since Taylor, since 1990. So there's just no dispute about how it applies in this particular case. Thank you. This is Sotomayor. This is Kagan. Mr. Edward, could you speak to the distinction between federal prior convictions and state prior convictions and why it would be that there would be two rules that the federal predicates would operate with the old drug schedules and the state predicates would operate with the new drug schedules? Sure, of course. So we do not believe that is the correct interpretation of E2A1 for the reasons we explain in our brief. Okay, let's say that I don't accept that argument and I think that the federal provision is pretty clear that there's no categorical approach going on and that it would be the old schedules. Sure. So two points on that. The reason, as we explain on page 17 of our reply brief, one possible reason at least, is that when you are doing the federal analysis, it's easy to just look at the statute of conviction. There's no notice problem. There's no administrability problem. You look at the judgment and say, was this person convicted under the CSA? Easy. You can't do that for state priors because you can't enumerate all the state statutes. So what Congress has done, it has looked to evolving federal drug schedules. That was the federal criteria they chose. And as I was explaining before, it is incredibly difficult and problematic for notice purposes for people to have to go all the way back decades earlier to the time of their state offenses to identify the federal drug schedule. So that's one. So this is why I asked whether you were making the notice argument as a constitutional argument or instead just as a key to statutory intent because it's not clear, right, that Congress in enacting statutes always wants to give the best notice possible to criminal defendants. That may be right, Your Honor. We're not making a full-throated due process violation argument. I think the canon of constitutional avoidance, though, may well come into this at some point if we're requiring ordinary people to go back decades and decades. The second point I wanted to make on the E2A1 point is the court absolutely does not have to interpret that provision to resolve this case in our favor because the court should simply say the exact same thing it said in Shular on page 786. The court unanimously said that the divergent text of the two definitions renders any divergence unremarkable, and that was quoting the government's own brief in that case. The exact same logic applies here. And, in fact, in Shular, the only question was whether E2A2 referred to offenses or conduct, and everybody agreed that E2A1 referred to offenses, and the court still said we don't care. The text is different. It's referring to conduct in E2A2. The same logic would apply here. It's just different text. Thank you. Thank you, Mr. Adler. Justice Gorsuch? Just to finish up where we left off, suppose the schedules are revised after the time of federal conviction. I understand that if a new drug were added, you would say ex post facto violation. But if a drug is removed, I think Mr. Green would say the defendant should get the benefit of that. Do you disagree? I want to understand why. We don't disagree because, of course, we would prevail under time of sentencing. No, I got that argument. But if you're using a time of offense rule that we are advocating here, then I think that's where the federal savings statute would come into play. And so Congress would really have to speak clearly to overcome the presumption in the federal savings statute that we apply the penalties in effect at the time of the offense. And that is what this court endorsed you refer to as an important background principle of interpretation. So I don't want to fight you too hard on that, but if we are operating under a time of offense rule, then, yes, you would not get the benefit of that. You take the bitter with the sweet. Correct, Your Honor. Justice Kavanaugh? I just want to make sure I understand your notice point. At the time of his first serious drug offense, let's say, or someone's first serious drug offense, you know, okay, I can't possess a firearm, 922G. Then you commit another serious drug offense, still 922G. Then you commit and are convicted of a third serious drug offense that qualifies. And you know at that time, okay, I can't possess a firearm and I'm subject to a 15-year mandatory minimum if I do so. You have all the notice you want at that point, even if there are later changes to the federal drug schedule. So I don't understand any notice problem. Your Honor, the notice is not applied at the time of the prior conviction. If it was, again, there would be an ex post facto problem for convictions that predate the enactment of the recidivist statute. That can't be right. But practically, too, people are not on notice at the time of their prior proceeding. They're not thinking about ACCA. Their lawyers do not have to advise them about ACCA. People are just dealing with the state case at that time. So to say that people have notice of ACCA when they haven't even committed a 922G offense yet, ACCA does not become legally relevant in any way until someone commits the 922G offense. That is when the penalties are incurred. That is when we are assessing notice, not at the time of the prior conviction. Thank you. Justice Barrett? Justice Jackson? So the thing I'm struggling with, with your argument, is that you say that we ordinarily apply the penalties in effect at the time of the offense, which I understand. But I guess in the context of this exercise, I thought what the statute was requiring courts to do was to essentially classify or categorize a past offense. So the court is today trying to impose sentence, today trying to determine if 15 years should be added, and Congress directs them to do so by looking at this person's rap sheet and determining if there are, quote, serious drug offenses there. What is hard for me is trying to understand why that classification is in any way related to the time of the ACCA offense. I get clearly Mr. Green's situation, because he says you're doing that classification today, and so what counts as a serious drug offense should be made relative to what we would think is serious now by looking at the schedules now. And the government, I get, because they say, well, when you're looking back at that offense, those offenses in the rap sheet, you should at least consider or it should be determined by what was serious then, right? What was on the schedule at that time? Your position, I'm trying to understand how it relates to the exercise of classifying this as a serious drug offense. Thank you, Your Honor. So let me try to explain it this way. This Court has a long line of precedents about recidivist statutes, and they all say the same thing, that recidivist statutes punish the latest offense of conviction, which is here the 922G offense. The government, by the way, ignores this line of precedent, talking about Greiger v. Burke, Nichols, Witt, Bryant, and Rodriguez, which is an ACCA decision. And so our point is that you're not looking at someone's culpability at the time they commit the prior. The state court has already sentenced them based on that understanding of culpability. You're sentencing them for what they have done at the time they commit the 922G offense. And the government's sort of contrary logic would prove too much because let's go back again to the burglary hypothetical. In that situation, someone commits it. Yes, I understand the government. What about Mr. Green's point? Again, we would have no problem if the court goes that way. But I think we are punishing the 922G offense, and this is how we always calculate statutory penalties in the law. We're looking at what were the penalties at the time the person committed the crime. Theoretically, those penalties are what could deter someone from committing that crime. No, I understand, but it's not relevant to the exercise. This is an exercise that is embedded in a definition of serious drug offense, which is, I think, what is the ultimate goal. We're assessing whether or not these prior things were a serious drug offense. Your argument is just, you know, if we were sentencing without that sort of definitional overlay, then we would do so based on what happened with respect to the ACCA crime. But I guess I'm just confused about the definition of serious drug offense and how it has any bearing on your rationale. So, Your Honor, I don't think there's any question that the statutory penalties in ACCA are incurred the moment someone commits the crime. That is the crime that we are punishing here, right? So we have to then view the—this is why the government agrees. We look at the version of ACCA in effect at the time of the crime, not at the time of sentencing, at the time of the crime. And then the question again comes back to where we began, which is, well, why are we going to look to all of the criteria in ACCA in effect at the time of the crime, not sentencing at the time of the crime, but carve out this one exception? Thank you. Thank you. Thank you, Counsel. Mr. Raynor? Mr. Chief Justice, and may it please the Court, to determine whether a prior state conviction qualifies as a predicate under the Armed Career Criminal Act, courts should consult the federal drug schedules in effect at the time of that conviction. That rule flows from the ACCA's text. As this Court recognized in McNeil, the ACCA establishes a sentencing enhancement for defendants with previous convictions involving drugs listed on the federal schedules. That language dictates a backward-looking inquiry that requires courts to assess the attributes of a prior conviction at the time that it occurred. Critically, the ACCA treats both federal and state convictions as predicates. Under Subclause 1, which unambiguously requires courts to consult the federal drug schedules in effect at the time of the prior conviction, there is no question about this. Courts have to look to the past. The same rule should apply to Subclause 2. A prior federal conviction would not disappear for ACCA purposes simply because the drug schedules were later amended to remove the relevant controlled substance, and there is no reason to treat state crimes differently when they involve the same culpable conduct and the same regulated drug. Rather than engage with the statutory text, petitioners rely exclusively on purported background rules of interpretation. Jackson most significantly argues that courts should apply the federal criminal law in effect at the time of the federal offense conduct. But the government agrees the version of the ACCA in effect at the time of the federal offense conduct is what controls here. The question in this case is which version of the federal drug schedules the ACCA's cross-reference specifies, and Jackson's interpretive principle does not answer that question. Justice McNeil, this Court recognized that the ACCA points courts to the prior version of state law in effect at the time of the state conviction. So, too, it points courts to the version of the federal drug schedules in effect at that same time. This Court should affirm the judgments below. If we, rather than looking at an underlying drug schedule, if the statute itself was amended, would your analysis be the same? No, Justice Thomas. We acknowledge that if the ACCA included a static list of substances, so if appended to this provision there was just a list of substances, cocaine, marijuana, and so forth, an amendment to that list would apply at the time of the federal offense conduct. We think the cross-reference to an external body of law that is dynamic is critical here. And in our view, the cross-reference raises a temporal question. When Congress chooses to reference an external body of law, that raises the question, which version of that body of law is Congress intending to reference? And we think the temporal question is particularly... I'm not sure why. I'd like you to concentrate on Justice Thomas's point. I think this is the most serious weakness in your argument because it doesn't make much sense to me. When you're cross-referencing something, you're taking everything with it. You're picking and choosing and now saying, I'm only going to take a piece of it, not all of it. To be clear, Justice Sotomayor, we agree you're looking at all the federal schedules. We're not only taking a piece of the schedules. The question is simply which version of the schedules. And as the Court discussed in JAMB... I think the question, though, is normally when we have a cross-reference, we look at the contemporaneous version of the cross-reference. I think that's Mr. Jackson's primary argument. And the statutory text here says, as defined in, which suggests we look at the present law, just as we normally would, just as you concede a moment ago that we normally would. What in the text suggests this backward-looking approach that you want to put into it? In the text. So in the text, we think the cross-reference raises the temporal question and the context answers the temporal question. As defined in. Those are the only terms that we have to work with. So as the Court explained to McNeil, I don't think the present tense does a lot of work here because this is a backward-looking statute. I disagree that the background rule is that we always look to the contemporaneous reference law. As the Court discussed in JAMB, the reference canon actually supplies the background rule here. And the reference canon has different temporal branches depending on context. The reason the reference canon is structured that way is because cross-references may refer to past law, they may refer to present law. Of course, and in fact in H we have such a thing. We don't here. We just have as defined in, not as was once defined or as at the time of state conviction or as had been. Lots of alternatives I can come up with that would accomplish exactly what you want and in fact appear elsewhere in the statute, but not here. I agree all of those formulations would answer the question dispositively and argue there's three aspects of the text that dictate a backward-looking inquiry. There's the term previous convictions. There's the term involving, which we think refers to historical attributes of an offense. And third, there is subclause one, which unambiguously requires a backward-looking inquiry. For sure. We ask a backward-looking inquiry when we're saying, do you have these things, these prior convictions? But when we're asking what is a serious drug offense, that's defined. That's the section that we're now dealing with. So what do we do with that? It's true that subclause one is separate from this, but previous convictions is an umbrella term that informs the meaning of everything that follows. Involving is actually in the clause that's at issue here. Involving is followed by a list of attributes of the prior state offense, and as defined in the federal schedules, it's part of that list. I think both of those textual pieces still apply in this case. And just shifting gears, your colleagues on the other side raised an ex post facto concern. What is the government's analysis of that? Is there an ex post facto concern? If not, why not? We agree that there's an ex post facto problem with Mr. Brown's interpretation because any time a drug is added to the schedules after the federal offense conducts. No, no, I'm saying with respect to your interpretation, if we accept the state offense time, there are going to be some drugs that will be added later. Correct. Inevitably. That's just the way the world works these days. And your colleagues on the other side say, well, that poses a serious ex post facto concern with your interpretation. And we're going to inevitably invite a number of ex post facto challenges. And I'm sure the government's given that thought. And I just want to know what you think the merits of that argument might be. We do not think there is any merit to that argument. And I actually don't understand them to be arguing that our position would create an ex post facto violation because. Let's suppose I understand that to be their argument. Then what? Then I still disagree that there would be such a problem because we agree that the ACA, in effect, at the time of the federal offense conduct, governs up until that point, the defendant can choose to possess a firearm or not to possess a firearm. So there's nothing retroactively being imposed on prior conduct. The prior convictions here are used to help ascertain the seriousness of the offense, how dangerous this defendant is. But ultimately, he's still being punished for the gun possession, which is the 922 violation. Again, but the serious drug offense changes on your view. We set it at this time of state conviction. But the schedules are dynamic, as you point out. And it's going to lead some individuals to be punished under your reading who would not otherwise be punished. And I guess I'm just trying to understand, again, do you think that's an ex post facto problem? If not, why not? I think the only way that there would be an ex post facto problem is if they were being punished for additions to the schedules after their 922G offense. That's what I'm asking. And that's not the case under our interpretation. Under our interpretation, you look to the schedules in effect at the time of their prior state offense. It's locked in at the earliest possible time of all the three. It's only Brown's interpretation that would create an ex post facto problem. Neither Jackson's nor yours would create any ex post facto issues as I understood it. Is that your understanding? That is also my understanding. Mr. Rainer, I'd like you to address the difficulty, you know, the lack of access to the prior drug schedules. I think that might be a problem with your approach from an administrability point of view. Yes. So, Justice Barrett, if we're talking about defendants, I think they paint this sort of artificial portrait that defendants at the time of their state convictions will be totally unaware of the federal schedule. I think that ignores an important part of how this statute works. The statute picks up federal convictions in analogous state convictions. So, state convictions involving federally prohibited conduct like manufacturing, distributing, or possessing with intent to do those things, a federally controlled substance. If you're a defendant who has trafficked in a federally controlled substance, you're going to be very interested in your federal exposure at the time, even if you're being prosecuted by state authorities. In fact, I think it would be more difficult for defendants who can't predict if the schedules are going to change later and not know whether their offense would be a predicate. I understand that. I'm just saying at the time of sentencing, for everyone, for the prosecutor, for the district judge, for the defendant who, after the act of offense is committed, has to figure out, does this predicate count? How do you find the schedules? I think part of it is you rely on the attorneys. The relevant scheduling changes are well known to both sides of the bar in Florida. It's Ioflupane and Hemp. I think they're overstating the degree to which this will be a practical problem. But to the extent you were worried about it, our position doesn't create any greater practical problems than McNeil already requires. McNeil's going to require you to go back and look at the state code in effect at the time. Well, the state code might be easier to find. How often do the drug schedules change at the federal level? Justice Barrett, I'm not sure that it will be easier to find because you won't just be able to look at the conviction documents, right? To conduct the categorical inquiry, you're often going to have to pull old state drug schedules, which is going to be much harder to find than old federal drug schedules. You're also going to have to pull old versions of the state code to determine what the maximum applicable punishment was because this punishment to which you were sentenced might not answer the question. Are the old federal drug schedules hard to find? It depends on what type of what you're looking for. So here, if we're talking about cocaine, cocaine has been scheduled since the beginning. If you look at the modern definition of cocaine, there's an exemption for ioflupine. You can discover that ioflupine was descheduled in 2015 via a Google search. So the argument presented here is just that difficult. Assuming I accept that there's a burden, I know you're saying there's not and the chief suggested there might not be. I accept it because I think every prosecution, probation officer, and defense counsel in these various amicus tell us there's a problem. Who bears the burden of proving this sentence? I know that defense counsel says we have to figure it out because we have to advise our client. But at the end, they're just defending against a charge. Doesn't the prosecutor bear the burden of proving it? Correct. And if there's any doubt, are you conceding on behalf of the government that if there's a doubt, it's in favor of the defendant and the enhancement should not be given? I don't concede that if there is any doubt, the defense automatically wins. Why? In our view, this is a sentencing factor that can be found by the judge. By a preponderance of the evidence? That question is not presented here. On a legal question? No, Justice Sotomayor, I'm not suggesting that. All I was taking issue with was your suggestion that any doubt is enough to get the defendant off the hook. I agree the government is going to have to bear the burden on this and prove it. So how would you want me to phrase that? It seems to me that it's as difficult as it's being suggested. If there is doubt, quantify how much doubt is enough to favor the defendant. Justice Sotomayor, as I said, the Sixth Amendment question is coming before the court soon. I don't want to get out ahead of our briefing on that. I do think that under Almendrez-Torres, this could be found along with the fact of the prior conviction. But I agree with you that this is something that the government must carry its burden on. And to get back to the burden question. By a preponderance of the evidence on a legal question? No, Justice Sotomayor, I think it's likely that it's beyond a reasonable doubt, but I'm not prepared to take a position on that today. Can I just direct your attention to the kind of overall theory of this? Because I'm, as usual, struggling with that. Do you concede that a change in the drug schedules reflects a change in what is considered to be a serious drug offense? In other words, to take a drug off the schedule, Congress has made a determination that that's no longer a controlled substance. It's not going to be something that we consider to be a crime. Justice Jackson, I certainly agree that going forward, that means someone can't be punished for that. And a state conviction going forward also would not be treated as serious. All right, so then my question, I guess, is why would Congress want to incapacitate defendants who have committed crimes that federal law no longer regards as serious? I mean, I thought the point of this was we're doing ACCA because we think, Congress says, that certain people need to be taken off the streets for long periods of time. And in order to identify those people, we look at their histories and determine whether they have committed certain kinds of crimes. If we today, as we undertake sentencing, have an understanding that these certain kinds of prior crimes are no longer considered serious because the schedules have changed, I guess I'm trying to understand why the government's position is that they should still be ACCA predicates. Right, the reason, Justice Jackson, is because we think in terms of assessing the seriousness of the prior offense, it makes sense to look at the legal landscape at the time the offense occurred. Why? We're doing the sentencing today and we're trying to determine whether this person today needs to be put in jail for 15 more years. So why does the seriousness or the label or the perception of the past as to what he did matter? Why wouldn't the criteria for determining that be what we think about his prior crimes today? It's relevant to his willingness to disregard the law. So to take Jackson as an example, he trafficked cocaine in 1998 and 2004. That was considered a very serious crime at the time. The fact that there was later a medical use discovered for a derivative of cocaine... Yes, no, I understand how it turns into a technicality in the particulars of this case, but what I'm saying is ACCA is not about punishing the person for the past offense. He's already, you know, been held responsible, culpable, sentenced for the past offense. I thought it was about incapacitating people who we can identify as particularly dangerous based on the nature of their past offenses. So it's not really about his willingness to commit a crime. I mean, if he had these criminal offenses, Congress would have just said, do you have an offense? Instead, they say, do you have a serious drug offense? And what I am struggling with and trying to get beyond is why we are evaluating the seriousness of that offense based on past standards as opposed to the standards that would apply today as we are making this 15-year determination. Justice Jackson, I think another way to come at this is this is unambiguously what subclause 1 does. It cares about the seriousness of the offense at the time. It cares about whether you had a federal conviction. Well, I'm not so sure about that. I mean, it doesn't... it too doesn't necessarily... I'm trying to find the statute. You know, it says an offense. It doesn't say a conviction under the Controlled Substances Act. And I appreciate that the previous thing says you have to have three previous convictions, right? But for a serious drug offense, and then it says an offense under the Controlled Substances Act. I mean, one could interpret that also with respect to modern standards because the exercise is trying to identify what is a serious drug offense. And if today we would say this is not an offense under the Controlled Substances Act, I suppose we could interpret the federal statute differently than what you're articulating, right? I don't think so, Justice Jackson. I think the text says, do you have a previous conviction for an offense under the Controlled Substances Act? If you have a conviction for an offense under the Controlled Substances Act, that's just the end of the analysis. Why couldn't it be today's Controlled Substances? That's what I'm asking you. It wouldn't be an offense for the Controlled Substances Act as it exists today. No, but it would be literally a conviction under the Controlled Substances Act. And to be clear, I am not aware of any court entertaining this argument before, much less adopting it. But it's also not an issue in this case, right? We're doing the other thing. Mr. Rainer, I'm sorry. Go ahead. Go ahead. No, you were first. Go ahead. Justice Kagan. Justice Kagan. Can I take you back to the conversation that you started having with Justice Thomas? If I understand your responses to those questions, you agree with Mr. Adler that if ACCA were amended so that burglary was not a predicate, you would go with the new version. Is that right? The version in effect at the time of the offense conduct. Correct. And same if instead of this language you had a list of five controlled substances and those five controlled substances were amended, again, the same result would follow. Correct? Yes. So your whole argument rests on treating differently a list of five substances or any other attribute of ACCA, treating it differently from a controlled substance as defined in Section 102. And that seems a little bit mysterious to me. I mean, if you ask why it is that Congress put in this language, a controlled substance is defined in Section 102, it's, well, number one, there are lots of controlled substances and you don't want to have to list all, however many there are. And number two, we expect them to change. So what's going to be a controlled substance next year is not necessarily the same as this year. And so on both of those theories of why Congress used this language, it seems perplexing as to why you would have a different rule than you would if Congress had just listed the substances. Right. Justice Kagan, I think one way to think about this is if it had listed the substances, that would reflect a static concern with particular substances. But by referencing an external body of law, Congress evinced its concern with the drugs status under federal law. And for the reasons I was discussing with Justice Jackson, it makes a lot more sense to look at the drugs status under federal law at the time of the prior conviction. I mean, I would think quite the opposite, that what Congress is saying when it uses this kind of language is we know this is going to be in flux, so keep on updating, you know. And that's an argument in Mr. Adler's favor, not in yours. Right. So, Justice Kagan, another way to come at this is that we think the cross-reference, as I mentioned to Justice Gorsuch, it raises the temporal question. When Congress puts in a cross-reference, we know from the reference canon there's multiple points in time it could be referencing. There's no background rule that it's always referencing current law. So in our view, the cross-reference, it only raises the question. It doesn't answer the question. We think what answers the temporal question is Subclause 1, the term previous conviction, the term involving Anne McNeil in this Court's precedent. It's that text and context that, in our view, answers the question in favor of the prior state conviction. Can I ask about, following up on Justice Jackson's questions, how to think about this statute? Because I think about it not as a purely recidivist statute for recidivist drug offenses, but as a gun statute. Once you have the three prior offenses for serious drug offenses or violent felony, you know don't possess a firearm. In fact, if you have one, you know don't possess a firearm. Once you have three, don't possess a firearm or you're getting a mandatory minimum. Because Congress was concerned about guns with drugs, not about drugs alone in this statute, about guns with drugs. And that's why you look at what Congress was concerned about. Yes, Justice Kavanaugh, I think that's an important response. So it's not just the drugs, it's the gun. Right, exactly. And I think that's an important response to their notice argument. As you mentioned earlier in your questioning of my friend, as soon as the defendant receives that third conviction, he's going to know. He cannot possess a gun going forward. That's not an inquiry for him to undertake ten years later when he decides to possess a gun. Now the response to that, so I want you to respond to what counsel said, was not really, they don't really pay attention to that, they're not advised to that. So will you respond to that? Yes, I think there's two responses to that. The first is what I just said to you, it inhibits their behavior going forward because they know one minute after that third conviction, if they possess a gun, they're subject to the act of enhancement. And the other response, I think, is what I mentioned to Justice Barrett earlier, which is this statute picks up federal convictions and analogous state convictions. And if you're trafficked in a federally controlled substance, you're going to be highly aware at the time of what your federal exposure is, even if you end up being prosecuted under state law. So that's the second reason the defendants will care at the time. All that being said, we think even if this is something that they research later, the burden is they still have to do that research before possessing a firearm. We don't think there's a problem even then. But we think the other side overstates the degree to which the defendant will be ignorant of federal schedules at the time of the state conviction. Counsel, you, in response to Justice Kagan, talking about the reference canon, noted that sometimes it can refer to the past rather than present law. But do you agree with the court in JAM that a general reference to an external body of law takes that body of law as it evolves over time? Justice Gorsuch, I agree with that insofar as it's not fixed at the time that the referring statute was enacted. We don't think that the JAM court had occasion to get to the level of specificity required to resolve this case. So every party in here— Let me just interrupt you there. I'm sorry. When a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises. There's other language, too. The reference is to an external body of potentially evolving law. So that's the general rule this court has adopted. And it's for you to overcome that general presumption, isn't it? I don't think so, Justice Gorsuch. The court actually articulated two branches of the canon. It said if there's a reference to a general body of law, it evolves. If there's a reference to a specific provision— It can sometimes be fixed. Sometimes. But generally, if there's a reference to a general body of law, the rule is— always an exception— that it takes it as it finds it. Yes. I think on its face, the canon here would suggest it's fixed because this is a specific reference. All the parties agree that that is overcome here. I think once the implication of the canon is overcome, the court should just look to Congress's intent without further reference to the canon. It should just ask, what did Congress intend here? And for the textual reasons you and I discussed earlier— even if you think that this falls within the dynamic prong of the reference canon— all of the parties agree that the schedules evolve and that this statute does not reference the schedules as they existed at the time of the ACCA's enactment. The question is, which of our dynamic reference points is correct? That's interesting. You concede that it's dynamic, too, but just it stops at a certain point. We concede it's not fixed at the time. Correct. I don't concede that that branch of the canon necessarily applies. But if you thought that it did, I don't think it supplies the requisite granularity to figure out which of the dynamic points that we're arguing about is correct. And this is evidenced by the fact that both Mr. Jackson and Mr. Brown claim that the reference canon supports their positions, even though they have different positions. Thank you. What do I do? I found it curious that the government argued for a time-of-federal-offense approach in the Court of Appeals in Brown. It's now changed its position. It wasn't the Solicitor General making the argument down there. You're entitled to raise any argument you want. But it does suggest to me that there is a reading of this statute that comports with Mr. Jackson's approach. Justice Sotomayor, just to clarify, the Brown briefs were filed at a time when this issue was just arising. It was very much in flux. And the government offered the Third Circuit the saving statute approach as a narrow way to resolve the case because Mr. Brown would lose under either time-of-federal-offense rule or time-of-state-crime rule. He only wins under his cart rule. And footnote three of our Court of Appeals brief reserves the time-of-state-crime rule for cases where it might matter. Why is this issue only arising now? That's a good question, Justice Barrett. I'm not sure about the answer. It may be that we've had more major descheduling recently than we did in the first, you know, 20 or 30 years of the ACCA's existence. But to my knowledge, this has really only started to arisen in the past two or three years. If I may for a moment just talk about Mr. Jackson's background rule. He says courts always apply current federal criminal law at the time of the offense conduct. It's important to note that that rule doesn't exist in the abstract. He draws it from three separate bodies of law. He amalgamates it first from the ex post facto clause, which says that post-offense changes that make the offense more culpable don't apply retroactively. That rule obviously doesn't implicate our position here. Second, he draws it from the saving statute, which says that post-offense changes that make the conduct less culpable also don't apply retroactively. Again, that sheds no light on our position here. And third, he draws it from the logical point that if you commit an act that's not a crime at the time, you haven't committed a crime. So if Congress passes a law that says you shall not murder, they repeal that law, and two days later you commit a murder, you simply have not violated any law. Again, that doesn't shed any light on our position here, which depends on ascertaining the seriousness of a predicate conviction. So in that situation, Congress repeals a federal statute. Let's say we're looking at the federal prong, and you commit federal crimes under the Controlled Substances Act at the time, and then Congress repeals that portion of the Controlled Substances Act. Is the government's position that it would still be acapredicate? Justice Jackson, if I'm understanding you correctly, if you were convicted of a CSA offense, Congress later repealed that aspect of the CSA, but it didn't make the change retroactive, so your conviction is still on the books. Yes. Yes, that would qualify as an acapredicate. My point in discussing the sources of this background rule is to show that when you reduce it to these sources, none of them shed any light on the question in this case. To say that courts apply current federal law and, therefore, the cross-reference points to the current federal schedules is entirely question-begging. It assumes the conclusion. Thank you, Counsel. Justice Thomas? Mr. Rayner, just so I'm clear, you do take the position that if the statute itself had been, if ACCA had been amended to change this schedule, if it was more dynamic, that petitioners would win? Justice Thomas, we agree that if the drugs were listed in the text of ACCA and that drug list was modified, Mr. Jackson's rule would apply. Now, this seems to be, in effect, an amendment of ACCA. So if, in effect, it's an amendment of ACCA, why is it treated differently or less exactingly than an actual amendment of ACCA? Justice Thomas, we disagree that this is equivalent to an amendment of ACCA. We think the way to think about this is there's the text of the ACCA, and then there's the external bodies of law that the ACCA requires courts to consult. And it's referring courts to external bodies of law because it cares about the legal landscape in existence at the time of the prior conviction. The external bodies of law include both the schedules and state law. So just as in McNeil, the Court said you have to look at state law at the time of the prior conviction, so too here. Justice Alito? Justice Sotomayor? Justice Kagan? Justice Gorsuch? Just to follow up on Justice Thomas's question, and not to belabor the point, but let's suppose that the language of E-1 was exactly as it is, so all of your textual clues are exactly as they are. But in A-1, instead of referencing the schedules, it listed drugs. You concede, I think, that despite all of your textual clues that you pointed to, that that would be dynamic. Justice Gorsuch, just to clarify, is in A-1 it listed drugs? Yes. In A-1 it said a serious drug offense means conviction for the following substances, cocaine, da-da-da, not whatever the crazy drug was added in or whatever. But if it listed those drugs, I think you've conceded multiple times that that would be dynamic. Correct. Despite all of the textual clues that you hang your hat on in the preceding paragraph. Right. And Justice Gorsuch, just to be clear about our analytical framework, if there's no cross-reference, there's no temporal question. So we think the cross-reference raises the temporal question. I understand that. And then the clues... But all of the clues wouldn't overcome the dynamic nature of the statute in those circumstances, right? I agree. It would not overcome the actual text of the act of... Well, the only change I'm positing is that the definition of a serious drug offense means an offense under the Controlled Substances Act, ya-da, ya-da, ya-da. Instead of that, it's just a list. Right. And I'm assuming the list also applies to Subclause 2 in your hypothetical. Whatever. Yeah. So if Congress actually listed drugs in both Subclause 1 and Subclause 2, we agree that... That all the textual clues that you otherwise think so important wouldn't overcome it. Correct, Justice Gorsuch. And the reason is that we think those clues answer the temporal question raised by the cross-reference. So if you eliminate the cross-reference, there's just no temporal question in the first place. Thank you. Justice Kavanaugh? Justice Parrott? Justice Jackson? So can I just ask you again about the point of the legislation? Because you had a back-and-forth with Justice Kavanaugh. And it seems... Does the government concede that incapacitation of certain serious offenders is what ACCA is about? At a high level of generality, yes. Because that's what the legislative history shows. I mean, we have House reports, we have Senate reports that say the purpose of this legislation is to curb armed, habitual career criminals and then have a big discussion of how we identify those people. So that's what this is about, right? Yes, Justice Jackson. At a high level of generality, we agree this is about incapacitating dangerous offenders. And so with Justice Gorsuch's point and Justice Kagan's point, I just want to be clear. If burglary is... Sorry, if other elements of this definition are changed, like possession, for example, hypothetically, you would agree that we'd be looking at the current definition and not the definition of serious drug offense at the time of the state conviction? If Congress actually amended in the text of the ACCA a definition of burglary, we agree that definition would apply to federal offense conduct occurring thereafter. And why is that? Why isn't that inconsistent with your argument that we should be applying the law at the time of the state offense? The reason, Justice Jackson, is we agree that what he's being punished for is his federal firearm offense. That's what this is punishing him for. But it's looking to prior convictions to ascertain his dangerousness, to ask, is this the sort of person we really don't want possessing a gun? Is this a drug dealer who we really don't want possessing a gun? And in ascertaining the seriousness of the prior convictions, it makes sense to look to the legal landscape at the time. No, no, no. I'm saying, so we have a definition. We have a definition of serious drug offense, and the definition says manufacturing, distributing, or possessing a controlled substance. You seem to be saying that if Congress changed that definition to drop possession out, you would not consider or you would apply the new definition, right, even if it previously included possession and it was a categorical match before at the time of the state conviction. I don't understand why the same argument doesn't apply to a change in controlled substance. It's just another element of the definition. Congress changes it. So why would you be saying that it has to be a categorical match only back at the time and not today? Right. Justice Jackson, we agree that the statute of conviction, the ACCA, in effect at the time of the federal offense is the one that applies because if you don't violate the version of the ACCA at the time of your federal offense conduct, you haven't violated the law. But the ACCA references external bodies of law, and so just as in McNeil the court looked at the state law in effect at the time of the previous conviction, so too here. We think this is an analogous inquiry. Thank you. Thank you, counsel. Mr. Adler, rebuttal. Thank you, Mr. Chief Justice. The colloquies between Justice Jackson, Justice Kagan, Justice Thomas, illustrate why the government's position fails in this case. I'd like to read you a quote from this court's decision in Engle v. Davenport from 1926. It's on page 8 of our reply brief, and it says that the adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. That is exactly what ACCA is doing with the controlled substances schedule. There is no legal basis to say that we would win this case had Congress enumerated all of the substances, but we lose this case just because Congress incorporated them by reference. But as Mr. Rayner repeatedly said at the podium today, that is the government's position in this case. We submit there is simply no legal basis to draw that sort of distinction, and we think that is simply the end of the case. The government's remaining arguments based on McNeil, culpability, backward looking, all of that prove too much because it would apply to all of the criteria in ACCA, burglary, possession, everything in ACCA. And the government agrees that cannot be right. So that argument fails too. I want to address briefly the reference canon because it came up a bunch. I'm not sure why the government is referring to it because there is no dispute in this case that the reference canon, the government's position is not even one of the options. There is two options. There is 1986, which would be for static reference, which no one thinks applies here, and there is a dynamic general law, which is everyone agrees this is dynamic. And so the question when you have a general reference is when does the question arise under ACCA? The question arises when the person commits the 922G offense. That's it. Finally, I want to address notice to address Justice Kavanaugh's earlier concerns and Justice Gorsuch's concerns about ex post facto. Our position on that is that if you think about a recidivist statute, a newly enacted one, let's say, it would have to apply to prior convictions that predated it. That's the whole point of the recidivist statute. But if you analyze notice at the time of the prior conviction, you couldn't do that. It would violate the ex post facto clause in that situation. That's why ACCA covers pre-ACCA predicates. Greiger versus Burke held that in the exact same situation. And this is not something of the past. Congress revises recidivist statutes all the time. It just did that in the First Step Act. The NAF debrief talks about this. 841 is the federal drug statute. It has enhanced mandatory minimums based on prior convictions for serious drug felonies, serious violent felonies. Those are brand-new terms. So under the government's view of notice, those terms don't apply. That statute doesn't apply to any conviction that predates the First Step Act of December 2018. That would be the logical implication of the government's argument. And nobody thinks that Congress could have intended that. We ask that the court reverse the judgment of the Eleventh Circuit. Thank you. Thank you, counsel. Case is submitted.